**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION**

| | | |
|---|---|---|
| DAVID A. CAWTHON, | * | |
| Petitioner, | * | |
| | | CASE NO. 7:00-CR-12 WLS |
| v. | * | 28 U.S.C. § 2255 |
| | | CASE NO. 7:08-CV- 90016 WLS |
| UNITED STATES OF AMERICA, | * | |
| Respondent. | * | |

**REPORT AND RECOMMENDATION**

A seventy-two count indictment returned in this court on May 16, 2000, charged Petitioner Cawthon and other defendants with offenses related to the operation of a "Ponzi scheme to sell promissory notes with no source of income other than the investors' funds." *United States v. Cawthon*, No. 02-12360 (11th Cir. August 6, 2003)(per curiam), slip op. at 2. Specifically, Petitioner Cawthon was charged in Count One with Conspiracy to Defraud, Counts Thirty-six through Forty with Mail Fraud, Counts Forty-one through Forty-seven with Wire Fraud, Counts Forty-eight through Fifty-one with Securities Fraud, and Count Fifty-two with Conspiracy to Launder the Proceeds of an Unlawful Activity. (Doc. 436-2). Petitioner Cawthon was arraigned on July 21, 2000 and pled not guilty. (Doc. 53). Petitioner, along with his co-defendants, was tried from January 22, 2002 to January 31, 2002, and found guilty on all counts charged. (Doc. 220). On August 25, 2002, Petitioner was sentenced to a total term of imprisonment of 210 months, to be followed by three years of supervised release, and was ordered to pay restitution in the amount of $2,157,776.06.

(Doc. 262).

Petitioner Cawthon timely appealed his conviction, which was affirmed by the United States Court of Appeals for the Eleventh Circuit on August 6, 2003, except for remand for re-sentencing as to Count Fifty-two. (Docs. 317, 347). Petitioner was re-sentenced on Count Fifty-Two ultimately to the same total term of imprisonment of 210 months, three years of supervised release, and restitution in the amount of $2,157,776.06. (Doc. 338). Petitioner appealed his re-sentencing, with the Circuit Court affirming the same on October 13, 2006. (Doc. 391). Thereafter, on May 27, 2008, Petitioner filed a Motion To Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. (Docs. 436, 439, 455).

## Discussion of Petitioner's Claims

### I. Ineffective Assistance of Trial Counsel

To prevail on a claim of ineffective assistance of counsel, a movant bears the burden of establishing by a preponderance of the evidence that his attorney's performance was deficient and that he was prejudiced by the inadequate performance. *Strickland v. Washington*, 466 U.S. 668 (1984); *Chandler v. United States*, 218 F.3d 1305 (11th Cir. 2000). To establish deficient performance, a defendant must prove that his counsel's performance was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. There is a strong presumption that the challenged action constituted sound trial strategy. *Chatelain v. Singletary*, 89 F.3d 749 (11th Cir. 1996). In order to show that counsel's performance was unreasonable, a petitioner must show that no competent counsel would have taken the action in question. *Van Poyck v. Florida*

2

*Department of Corrections*, 290 F.3d 1318 (11th Cir. 2002). To satisfy the prejudice prong, a petitioner must show that there is a reasonable probability that, but for counsel's inadequate representation, the proceedings would have been different. *Meeks v. Moore*, 216 F.3d 951 (11th Cir. 2000), and *Mills v. Singletary*, 63 F.3d 999 (11th Cir. 1995). If a defendant fails to establish that he suffered prejudice as a consequence of the alleged ineffective assistance, a court need not address the performance prong of the *Strickland* test. *Holiday v. Haley*, 209 F.3d 1243 (11th Cir. 2000).

Counsel cannot be considered ineffective for failing to raise claims that lack merit. *See Alvord v. Wainright,* 725 F.2d 1282, 1291 (11th Cir. 1984). The Eleventh Circuit Court of Appeals stated in *Rogers v. Zant,* 13 F.3d 384, 386 (11th Cir. 1994):

> The cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 2064 (1984). To establish prejudice, the Petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* at 694..... When reviewing whether an attorney is ineffective, courts "should always presume strongly that counsel's performance was reasonable and adequate." *Atkins v. Singletary*, 965 F. 2d 952, 958 (11th Cir. 1992).

In **Ground One** of his Amended Motion to Vacate, Set Aside or Correct Sentence, Petitioner Cawthon cites four claims of ineffective assistance of counsel, as follows:

### A. Counsel was unconstitutionally ineffective for failing to communicate favorable plea offers from the United States and for misadvising Mr. Cawthon concerning the available evidence to support acquittal and the likelihood of securing the same, where such actions resulted in Cawthon proceeding to the initial trial, and retrial after a mistrial was declared.

In his first claim of ineffective assistance of counsel, Petitioner contends in that due to the "unprofessional manner and amateurish demeanor" of his attorney, John Francisco, Petitioner would have pled "guilty if a reasonable plea offer could be secured." (Doc. 439-2, p. 7). Petitioner further contends that Francisco failed to advise him of two facts relevant to his case: (1) that co-defendant Virgil Womack had agreed to enter a guilty plea, and (2) that the Government had offered to allow him to plead guilty to the lesser charges in the indictment and receive the benefits of acceptance of responsibility, thereby reducing his sentence. *Id.* Petitioner claims he only learned of the offer after receiving his case file from Francisco in late 2006, and when he questioned Francisco about the plea offer, "Francisco would only say the offer was 'about five years.'" *Id.* Petitioner contends, "on information and belief" that more than one plea agreement was tendered by the Government to be relayed to him, but none was ever offered by Francisco. *Id.*

As to Petitioner's claims that his counsel was ineffective because he failed to inform him that co-defendant Womack had chosen to plead guilty, Petitioner stated in his Amended Memorandum that "[d]uring the initial trial, Mr. Cawthon learned that Virgil Womack had entered a guilty plea and would not be tried with him. Cawthon then demanded that Mr. Francisco either arrange for Virgil Womack to testify or negotiate a favorable plea deal with

the United States." (Doc. 439-2, p. 8). Petitioner's claim that he was unaware of Womack's plea deal, therefore, is at the least disingenuous. Furthermore, Petitioner is unable to establish that even had Womack testified at his trial, that the result of said testimony would have resulted in a different outcome.

As to Petitioner's claim that he was not informed of the plea deal offered by the United States, Federal courts throughout the United States have considered this issue and unanimously held that counsel is constitutionally ineffective in failing to communicate the existence and terms of a plea offer to his client. *See Cullen v. United States,* 194 F.3d 401 (2nd Cir. 1999); *United States v. Blaylock,* 20 F.3d 1458 (9th Cir. 1994); and *Diaz v. United States,* 930 F.2d 832 (11th Cir. 1991) citing *Johnson v. Duckworth,* 793 F.2d 898, 902 (7th Cir. 1986), *cert denied,* 479 U.S. 937, 107 S.Ct. 416 (1986) (client must be involved in decision to accept or reject plea offer, and failure to inform client of offer constitutes ineffective assistance).

The record establishes that on March 1, 2001, at the pre-trial hearing in this case at which Petitioner was in attendance, the United States Attorney notified the court of the plea offers made to each of the defendants. (Doc. 446, Exhibit 4, p. 12). Petitioner was also notified at that time of the possibility that upon their pleas of guilty, "of the Government filing a 5(k) motion based on their cooperation." *Id.* at 13. The transcript of the hearing further reveals the following exchange between Petitioner's counsel, Mr. Francisco and the court:

>     Mr. Francisco:     Your honor, Mr. McCommon, long ago,

> early on in this case, made a plea bargain offer to Mr. Cawthon. It was communicated to him. An estimate on the sentencing guidelines was performed, both with it and without it, and he has been advised of that. And I have communicated to him Mr. Cawthon's decision in that matter.

> The Court:     Thank you very much. . . .

*Id.* at 16-17. Thus, Petitioner's contention that his counsel was ineffective for failing to inform him of any formal plea offer is factually without basis and therefore without merit.

### B. Counsel was constitutionally ineffective for failing to object to the Court's erroneous instruction to the jury regarding Count Fifty-two.

Petitioner next contends that during his trial, the court gave "incomplete and partially inaccurate instruction[s] of the jury" to which his counsel failed to object. (Doc. 439-2, p. 11). He argues that due to the improper jury instructions, he was convicted of crimes not charged in his indictment. *Id.* at 14. Petitioner's initial assumption that he was charged in Count 52 of the indictment with only a violation of 18 U.S.C. § 1956(h) is inexact. The indictment with which Petitioner was specifically charged states in Count Fifty-two, that:

> On or about November of 1996, the exact date being unknown to the Grand Jury, and continuing to on or about the 20th day of June 1997, in the Valdosta Division of the Middle District of Georgia and elsewhere, the defendants . . . and others both known and unknown to the Grand Jury, knowingly conspired and agreed together and with each other, and with others both known and unknown to the Grand Jury, to commit offenses under Title 18, United States Code, Sections 1956 and 1957, that is:
> (1) to conduct and attempt to conduct a financial transaction affecting interstate commerce, which transaction involved the

> proceeds of specified unlawful activity, that is, mail fraud and wire fraud, with the intent to promote the carrying on of such specified unlawful activity, and that while conducting and attempting to conduct such financial transaction knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(I); and
> (2) to knowingly engage and attempt to engage in a monetary transaction in criminally derived property that was of a value greater than $10,000.00 and was derived from specified unlawful activity, that is, mail fraud and wire fraud, in violation of Title 18, United States Code, Section 1957.

(Doc. 1. pp. 25-26.) In Part C of Count Fifty-Two, Petitioner was charged to establish the "manner and means" of the money laundering conspiracy pursuant to Subsection (h) of 18 U.S.C. § 1956, which states that "[a]ny person who conspires to commit any offense defined in this section or section 1957 shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy." (Doc. 1, p. 27).

Petitioner uses that claim to further argue that the court confused 18 U.S.C. § 1956(h) with 18 U.S.C. § 371[1]; "mischaracterized" or "misapprehended" Count 52 "as if it was a substantive charge"; confused Count 52 with Count 53 in giving the jury instructions; and mistakenly charged the jury as to an offense, 18 U.S.C. § 1956(a)(1)(a)(i), with which he claims he was not charged. (Doc. 439-2, pp. 12-13). Petitioner, however, is incorrect as to each of his claims. First, the court gave proper jury instructions as to Count 52, providing

---

[1] 18 U.S.C. § 371 is the general criminal conspiracy statute which creates an offense "[i]f two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose."

7

the jury with the elements of money laundering in violation of 18 U.S.C. 1956. Furthermore, upon resentencing, the court specifically referenced 18 U.S.C. § 1956(a)(1)(A) as the crime upon which Petitioner was found guilty beyond a reasonable doubt. A thorough review of the record reveals that Petitioner's analysis of the jury instructions given by the court fails to cite any proper authority which would support his conclusions and, thus, is wholly without merit.

"Conclusory claims are not cognizable and therefore do not merit consideration." *State v. Jones,* 614 F.2d 80 (5th Cir. 1980). Furthermore, "[c]onclusory allegations of ineffective assistance are insufficient." *Wilson v. United States,* 962 F.2d 996 (11th Cir. 1992)(citing *United States v. Lawson,* 947 F.2d 849, 853 (7th Cir. 1991). Having failed to establish that the court erred in providing instructions to the jury, Petitioner cannot show that his counsel's conduct resulted in any prejudice to him, or that no other attorney would not have acted exactly as Petitioner's trial attorney did in this respect. Also, having failed to show prejudice, actual, presumptive, or otherwise, Petitioner's claim lacks merit and should be denied.

**C.   Counsel was unconstitutionally ineffective for failing to object to the imposition of a sentence in excess of the statutory maximum of the lesser object of an ambiguous count of conviction.**

Petitioner next argues that his counsel failed at both his initial sentencing and his re-sentencing to object to the court's imposition of a "sentence above the *Apprendi*, 530 U.S. 466 (2000) based statutory maximum of ten (10) years for the ambiguous 18 U.S.C. §

1956(h) charge contained in Count 52." (Doc. 439-2, p. 15). As an initial matter, it has already been established that Petitioner was charged and convicted pursuant to 18 U.S.C. §§ 1956(a)(1)(A)(i), and as such, there is no ambiguity as to Count 52, for which Petitioner was sentenced to serve 210 months imprisonment, to be followed by three years of supervised release, and restitution in the amount of $2,157,776.06.

Petitioner contends that the statutory maximum for Count 52:

> "is determined by the object of the § 1956(h) conspiracy. Section 1956 triggers a statutory maximum of twenty years imprisonment while Section 1957 mandates a statutory maximum of ten years imprisonment. Because the jury returned a general verdict on Count 52, *Apprendi*, supra, and *Allen*, supra require application of the lesser statutory maximum."

(Doc. 439-2, p. 16). While he is correct as to the maximum penalties for violations of 18 U.S.C. §§ 1956 and 1957, Petitioner's belief that case law mandates that he be sentenced according to the lesser statutory maximum is misguided at best. There is no requirement in either *Apprendi* or *Allen* that compels the court to sentence a defendant in accordance with the lesser statutory maximum sentence charged in a single count of an indictment. In his charge to the jury, the court specifically referenced the charge of money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i), and the jury convicted Petitioner of the same. Petitioner appealed his conviction and the Eleventh Circuit Court of Appeals remanded the case for resentencing "where the district court failed to find beyond a reasonable doubt which offense in the multiple-count indictment the defendants conspired to commit." (Doc. 446-3, p. 12). At his resentencing, the court specified that it found that the defendants

"conspired to launder monetary instruments in violation of 18 U.S.C. § 1956(a)(1)(A). That violation was an object of Count 52 which charged a conspiracy to launder monetary instruments in violation of 18 U.S.C. § 1956(h)." Finding no sentencing error by the court, therefore, Petitioner's claim that his counsel was ineffective for failing to raise any sentencing errors must fail.

> **D.      Counsel was constitutionally ineffective for failing to object, research and properly argue the mischaracterization and misapplication of sentencing calculation characteristics for Count 52.**

Petitioner next argues that his counsel was ineffective for failing to invoke the "void-for-vagueness principle" where he claims "18 U.S.C. § 1956's failure to define 'proceeds' renders the statute vague in violation of Petitioner's due process rights." (Doc. 439-2, p. 16). Petitioner further argues that *United States v. Santos*, 128 S.Ct. 2020 (2008), which ultimately held that, at least as applied to illegal gambling at issue in that case, 18 U.S.C. § 1956(a)(1)'s use of the term "proceeds", was ambiguous as to whether it referred to "profits" or "receipts," and thus, rule of lenity was applicable. *Santos*, however, was not issued until almost six years after Petitioner was convicted and sentenced.

Petitioner is unable to show that had his counsel raised the issue of vagueness the outcome of his case **would** have been different, but merely argues that his counsel was ineffective for failing to raise the issue when it was available to him. This is especially important where, as the Petitioner notes, the district courts were divided as to this issue prior to *Santos*. *See U.S. v. Santos,* 128 S.Ct. 2020, 2025 n.2 (2008). The *Santos* decision itself

10

was merely a plurality decision, and Petitioner's claim that his counsel was ineffective for failing to raise the issue of ambiguity in defining the word "proceeds", when in fact counsel could not have know that the Supreme Court would issue its decision in *Santos*, is requiring counsel to be clairvoyant, something the *Strickland* standard does not require. Therefore, Petitioner's claim is without merit.

## II.     Ineffective Assistance of Appellate Counsel

Petitioner has alleged several claims of ineffective assistance of counsel as to counsel's representation of him on appeal. (Doc. 439-2, p. 18). The Eleventh Circuit Court of Appeals has held that the *Strickland* standard applies to ineffective assistance of appellate counsel claims. *Heath v. Jones,* 941 F.2d 1126, 1130 (11th Cir. 1991), cert denied, 502 U.S.1077, 112 S. Ct. 981 (1992). To prevail on such claims, a Petitioner must show that his appellate counsel's performance was deficient and that this performance prejudiced the defense. *Id.*

In this case, Petitioner was represented by the same counsel at trial and on appeal. In his ineffective assistance of appellate counsel claims, Petitioner makes identical claims of error on the part of Mr. Francisco as were argued in his claims of ineffective assistance of trial counsel. Because no error was found with regard to the trial court's jury instructions, the court's resentencing of Petitioner, nor counsel's failure to raise the "void-for-vagueness" claim, there is no need to analyze those claims a second time. Petitioner's claims of ineffective assistance of appellate counsel, therefore, fail.

## III.    Actual Innocence

On October 6, 2008, Petitioner filed a Motion to Amend his § 2255 motion to add a claim of actual innocence pursuant to the holding in *U.S. v. Santos*. The court granted Petitioner's motion and the Respondent filed its response on March 12, 2009.

In his second Amended Motion, Petitioner argues that he is "actually innocent of Count 52 based on the Supreme Court's holding in *United States v. Santos*." (Doc. 455, p. 2). Petitioner argues that "application of the 'proceeds' definition to the conduct which underlies [his] money laundering conviction results in the realization that [his] conduct no longer constitutes a violation of the statute." *Id.* In *Santos,* the Court weighed "whether the term 'proceeds' used in the federal money-laundering statute, 18 U.S.C. § 1956(a)(1), referred to 'receipts' or 'profits.' " 128 S.Ct. at 2022. At issue in *Santos* was an illegal gambling operation, and the defendant was convicted of money laundering in violation of 18 U.S.C. § 1956. *See id.* at 2022-23. A plurality of the Justices found that the term "proceeds" was ambiguous and, applying the rule of lenity, concluded that the term means "profits," and not "gross receipts." *See id.* at 2023-25. Under the plurality's view, "to establish the proceeds element under the 'profits' interpretation, the prosecution needs to show ... that a single instance of specified unlawful activity was profitable and gave rise to the money involved in a charged transaction." *Id.* at 2029.

Carefully analyzing the Supreme Court's decision in *Santos*, the Eleventh Circuit Court of Appeals upheld the conviction and sentence of a defendant who was convicted of money laundering in violation of 18 U.S.C. § 1956, holding that:

12

> *Santos* has limited precedential value. Three parts of Justice Scalia's four-part opinion are for plurality of justices, and those parts do not state a rule for this case. "When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds....' " The narrow holding in *Santos*, at most, was that the gross receipts of an unlicensed gambling operation were not "proceeds" under section 1956, but there is no evidence that the funds Demarest laundered were gross receipts of an illegal gambling operation. The evidence instead established that the laundered funds were the proceeds of an enterprise engaged in illegal drug trafficking.

*U.S. v. Demarest,* --- F.3d ---, 2009 WL 1606937 (11$^{th}$Cir. June 10, 2009). The Court rejected Demarest's argument that he did not launder "proceeds" of illegal activity, because the monies at issue were the "receipts" from the sale of a yacht, not profits. The Court found that because Santos was decided by a plurality of the Court, its narrow holding regarding proceeds applied only to cases involving gambling operations, and not, as in that case, drug trafficking.

Of note, on May 20, 2009, President Obama signed into law the Fraud Enforcement and Recovery Act of 2009 ("FERA"), which, in relevant part, amends 18 U.S.C. § 1956 by adding subsection (c)(9) to define proceeds as "any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity". 18 U.S.C. 1956(c)(9); Pub. L. 111-21 (2)(f)(1) (May 20, 2009). The FERA legislation has effectively overruled the plurality decision in *Santos*, and any prior ambiguity as to the meaning of "proceeds"'" has now been resolved. Therefore, under all

13

circumstances, Petitioner's claim that the holding in *Santos* rendered his conviction null and void is incorrect, and his collateral attack under *Santos* fails.

### IV.  Pending Motions

Petitioner has filed several motions regarding this case which are pending, including a Motion for Evidentiary Hearing.  The district court need not hold an evidentiary hearing every time a section 2255 claim of ineffective assistance is raised. "A hearing is not required on patently frivolous claims or those which are based upon unsupported generalizations.  Nor is a hearing required where the Petitioner's allegations are affirmatively contradicted in the record." *Holmes v. United States*, 876 F. 2d 1545, 1553, (11th Cir. 1989).  Therefore, it is recommended that any pending motions in this case be denied as moot.

**WHEREFORE, IT IS RECOMMENDED** that Petitioner Cawthon's Motion To Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 be Denied.  Pursuant to 28 U.S.C. § 636 (b)(1), Petitioner may serve and file written objections to this Recommendation with the UNITED STATES DISTRICT JUDGE, WITHIN TEN (10) DAYS after being served with a copy hereof.

**SO RECOMMENDED** this 26th day of June 2009.

**S/ G. MALLON FAIRCLOTH**

**UNITED STATES MALLON FAIRCLOTH**